695 S.E.2d 889

**In the Matter of BRYANNA H. and Skylar H.**

**No. 35306.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 10, 2010.

Decided June 9, 2010.

---

Courtney L. Ahlborn, Esq., Parkersburg, WV, for Appellant Brian H.

Darrell V. McGraw, Esq., Attorney General, Katherine M. Bond, Esq., Assistant Attorney General, Charleston, WV, for Appellee WVDHHR.

Carl P. Bryant, Esq., Bryant and White, St. Marys, WV, for Appellee Robin M.

Eric K. Powell, Esq., Parkersburg, WV, for Appellee Anthony M.

Katrina M. Christ, Esq., Parkersburg, WV, Guardian ad litem for Bryanna H. and Skylar H.

PER CURIAM:

This appeal arises from the May 1, 2009, final dispositional order entered by the Circuit Court of Wood County in an abuse and neglect proceeding that resulted in the placement of the minor children in the home of their mother, Robin M., and her husband, Anthony M. In this appeal, Brian H., the appellant and respondent-father below, contends that the circuit court erred in granting the children's stepfather an improvement period, by adjudicating the children abused and/or neglected because of his own conduct, and by placing the children in the home of their mother and stepfather.[1] The mother, Robin M., and her husband, Anthony M., did not appeal any part of the order but did participate in this appeal.

The Court has before it the petition for appeal and the entire record in this matter. Based upon the briefs and arguments of the parties, and for the reasons set forth below, the order of the circuit court is reversed, and this case is remanded to the circuit court with directions to hold an immediate dispositional hearing that adequately contemplates the placement of the children in the home of Brian H., as a non-abusing parent.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This proceeding commenced in the Circuit Court of Wood County with the filing of a petition on August 28, 2007, alleging that four children of the appellee-respondent, Robin M.[2] were abused and neglected children. The four children affected by this action were Bryanna H., born June 24, 1998; Skylar H., born April 24, 1996; and twins Holly T. and Hanna T., born November 9,

1994. The father of Bryanna H. and Skylar H. is Brian H., the appellant-respondent in this matter. The father of Holly T. and Hanna T. is Kenny T. The order appealed by Brian H. does not address the placement of Holly and Hanna T. and as such, Kenny T. did not participate in this appeal.[3] Counsel was appointed for all parties and a guardian ad litem was appointed to represent the minor children.

The original petition herein was signed and verified by Amy Rexroad, a representative of the West Virginia Department of Health and Human Resources, hereinafter referred to as "the Department." In it, the Department alleged that the children were abused and/or neglected children within the definition of West Virginia Code § 49-1-3 (2007) (Repl. Vol.2009). The petition contained allegations that the children's health, safety and welfare was endangered by events as early as October of 2006, when Robert J., then the husband of the mother Robin M. and the children's stepfather, committed acts of domestic violence involving a firearm. Skylar H. and Holly T. were instrumental in disarming Robert J. on this occasion. Over the course of the next six months, the family received services including counseling for the children and domestic violence counseling for the family, but domestic violence continued in the home. In May, 2007, Robert J. left the residence that he shared with Robin M. and the four children.

At about the same time, Robin M. began a new relationship with Anthony M., an appellee in this matter. While the family was still receiving services from the Department related to when Robert J. lived in the family home, a new referral was made alleging that Robin M. and Anthony M. were engaging in drug use in the presence of the children.

---

1. It was revealed at the oral argument of this case that one of the children who had been returned to Robin M.'s custody was in fact residing elsewhere. This fact did not appear to have been known by the Department, who had ceased monitoring the family.

2. We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full surnames. See *In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

3. By Order entered April 29, 2009, the circuit court ordered, *inter alia*, that "in regards (sic) to the above named children, Holly and Hanna T. that physical and legal custody shall remain with the respondent father, Kenny T. and that the parents shall return to the original parenting plan with encouragement to expand visitation as desired by the children and the parent."

The children also informed social workers of a trip to a local tattoo shop where Anthony M. and Robin M. purchased drugs. The petition included an allegation that Anthony M.'s parental rights to his own children had been terminated in another proceeding by order dated May 27, 2005. Anthony M.'s parental rights were affected in part by his conviction on child abuse charges arising in the State of Florida, as well as by acts of domestic violence against his former wife in the presence of his children. The petition also included an allegation that Anthony M. had an "extensive criminal history."

The concerns about the presence of Anthony M. in the home prompted social workers providing services to the family to approach Robin M. about signing a protection plan that included a condition that Anthony M. would not reside in the home. Robin M. refused to agree to this plan, calling it harassment on the part of the Department. The mother's failure to execute the protection or safety plan prompted the filing of the initial petition.

In the order filing the petition, the lower court found, *inter alia*, that "by removing Anthony M. from the home of the respondent-mother, the children can be protected and safe." The court order contained the following findings:

There exists no imminent danger to the children if Anthony M. is not permitted to have contact with the children, and therefore if he is removed from the home, removal from the home of the respondent-mother would not be in the best interest of the children.

It is accordingly ORDERED that Bryanna H., Skylar H., Holly T. and Hanna T. shall remain in the home of Robin J.

It is further ORDERED that the alleged abusing person, Anthony M., is ordered to refrain from visiting or residing in the home of the children, and from having any unauthorized contact with the children.

It is further ORDERED that if the respondent-mother continues to let Anthony M. live in her home or have contact with the children, then the children should be removed immediately from the home and placed in the custody of the Department,

after which the Court should be immediately notified and a preliminary hearing will be held.

The order filing the petition required the Department to convene a multi-disciplinary team (MDT) meeting within 30 days of the filing of the petition, and required that the Department provide the respondent parents with forms to complete for the purposes of evaluating and establishing child support.

On August 28, 2007, the Department filed an amended petition with new allegations regarding Robin M.'s conduct since being served with the original petition. At the time of the filing of the amended petition Holly T. and Hanna T. were residing with their biological father. Skylar H. and Bryanna H. likewise were residing in the home their biological father, the appellant Brian H., and paternal grandmother. The amended petition included an allegation that Robin M. was not going to make Anthony M. leave the home and that they intended to get married. It was alleged that Anthony M. was disruptive during the process of carrying out the court's order and police officers attempted to escort him off the property, to the mother's protest.

The preliminary hearing on the amended petition was scheduled for September 4, 2007. After a hearing, the lower court found that imminent danger existed to the physical well-being of the children and that there were no reasonable alternatives to the removal of these children from the home of their mother, Robin M. The circuit court found that reasonable efforts were made to prevent the removal of the children including services by the Department and the opportunity offered to Robin M. to have the children remain in her home provided Anthony M. was not present. The lower court further found that Robin M. "refused to cooperate with the Department and further failed to comply with the previous Order of this Court in that she refused to keep Anthony M. away from her children." The Department was granted legal custody of Bryanna H. and Skylar H. and their placement was at the paternal grandmother's home.

An adjudicatory hearing was scheduled for September 19, 2007. The respondent mother, through her counsel, requested that this hearing be continued. The adjudication of this matter was rescheduled for October 20, 2007.

At an adjudicatory hearing on October 20, 2007, Robin M. and Anthony M. moved for a pre-adjudicatory improvement period pursuant to West Virginia Code § 49–6–12(a) (1996) (Repl.Vol.2009) and Rule 23 of the Rules of Procedure for Child Abuse and Neglect.[4] In her motion for the improvement period, the appellee mother requested that the children remain with her during the pendency of the improvement period. The Department objected to the children's placement with their mother and Anthony M. on a period of improvement without appropriate evidence being received in support of the motion. The court continued the hearing to December 14, 2007, and ordered that Robin M. and Anthony M. be subjected to urinalysis to detect the presence of drugs in their bodies. Anthony M. acknowledged to the court that his urine screen would be positive for marijuana. At the hearing on December 14, 2007, Robin M. and Anthony M. withdrew their request for pre-adjudicatory improvements periods and announced that they wished to stipulate to the adjudication. The court continued the hearing to January 28, 2008. Evidence was taken on January 28, 2008, and the hearing was continued until March 7, 2008. This date was later changed to March 18, 2008. Because of the guardian ad litem's illness, this hearing was continued until April 18, 2008.

On April 18, 2008, Robin M. and Anthony M. stipulated to the circuit court that the children were abused and neglected. Their written stipulation contained the following admissions:

1. Anthony M. has had his parental rights terminated to his own natural children. The underlying basis for the termination was physical abuse of a stepchild and use of illegal controlled substances. Anthony was given an improvement period, which he failed to complete.[5]

2. Robin C.[6] has previously been married to Robert J. and while married, the children observed domestic violence between the two, including the use of a gun and leaving bruising to the respondent-mother. The Department opened a case in 2006 and Robin cooperated with the Department receiving parenting classes and counseling for the children. Robert J. finally moved out of the house in April, 2007.

3. Robin C. then began dating Anthony M., living in the home with the children and Robin.

4. Anthony M. continued to use illegal controlled substances and the children testified they saw him using illegal

---

**4.** Both Robin M. and Anthony M. requested pre-adjudicatory improvement periods, which may be in effect for a period not to exceed three months. This contrasts with the post-adjudicatory improvement period defined by West Virginia Code § 49–6–12(b), which may continue for a period not to exceed six months, and the dispositional improvement period contained in West Virginia Code § 49–6–12(c), which allows for an improvement period for a period not to exceed six months. Both post-adjudicatory improvement periods and dispositional improvement periods may be extended for a period not to exceed three months pursuant to West Virginia Code § 49–6–12(g) "when the court finds that the respondent has substantially complied with the terms of the improvement; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that such extension is otherwise consistent with the best interest of the child."

**5.** At a hearing on January 28, 2008, John Arnott testified on behalf of the Department that he was the assigned child protective services worker working with the Anthony M. family. An abuse and neglect proceeding was instituted in 2005, that ultimately led to the termination of Anthony M.'s parental rights to his children with Bobby Jo M., his former wife, and the prohibition of continued contact with his stepchildren who were also named in the petition.

**6.** Throughout the course of these proceedings the appellee-mother has been known by various surnames. At the time of the filing of the original petition, Robin M. was known by the name of Robin J. When she divorced her husband Robert J., she returned to her previous name of Robin C.

controlled substances as well as saw the illegal controlled substances and the paraphernalia used to consume said substances. Robin C. was aware of his use of marijuana.

5. Robin C. refused to have Anthony M. move out of her home.

As a part of the stipulation and by agreement, Robin M. was granted a six-month post-adjudicatory improvement period. The stipulation and agreement did not include an improvement period for Anthony M. The Department, the appellant and the father of the other children involved in the proceeding objected to the granting of the improvement period to Anthony M. The lower court ruled, however, that Anthony M. should receive an improvement period. As result of their agreement and the court's order, the appellees were placed on a six-month post-adjudicatory improvement period. As noted above, at this time Bryanna H. and Skylar H. were residing in the home of their paternal grandparents, which was also the home of their biological father, Brian H.

After the entry of the adjudication against the appellee mother and Anthony M., the petition was amended on April 30, 2008, for a second time. This amended petition, which is the subject of this appeal, contained the first allegations of wrongdoing regarding the appellant, including that he had a history of domestic violence, which included pushing Robin M. "down in the street while the children are present and throwing items at the children (sic) October 1997." The petition also contained reference to a conversation between the guardian ad litem, the guardian ad litem's investigator and the children wherein it was reported that the children believed any mail they received from their mother, Robin M., was confiscated and hidden from them in a file in their grandparents' computer room. The Department characterized this as "emotional abuse" on the part of the grandparents and on Brian H.'s part, because he knew the mail was being taken and it upset the children. It was further

alleged that the children were not happy in their current placement at their paternal grandparents because their father was not around and they did not like his girlfriend. The petition also alleged that Brian H. was inappropriate in his interactions with personnel at his children's school and that he wrongfully attempted to remove the children from school.

At the adjudicatory hearing, the principal witnesses against Brian H. were Robin M. and the children. Robin M. testified that in 2005, she petitioned Wood County Family Court seeking cessation of his contact with the children. Robin M. testified that she sought this relief "because the girls were coming back crying about things he did to them and that happened to them when they was (sic) with him." While the record does not contain a copy of the applicable Family Court order, Robin M. stated that the order entered prohibited Brian H. from having contact with his children.[7] Despite the existence of this prohibition, Robin M. began letting the children see Brian H. again "right before all this started with me and Anthony."

Skylar H. testified at the May 23, 2008, adjudicatory hearing that on one occasion after the filing of the petition, she and her sister Bryanna H. went to the home of their father's girlfriend, April G., and to Blockbuster. On several other occasions their father took them to McDonald's or to school without anyone else being present. Regarding what the circuit court ultimately concluded was emotional abuse on the part of Brian H., the following testimony was elicited between the assistant prosecuting attorney and the child:

Q. Now, when you stayed with your Grandma and your Grandpa H., were there things that kind of bothered you?

A. Yeah.

Q. Can you give me an example of some things that bothered you while you were there?

A. They'd hide our cards and letters that my mom gave us or sent.

---

7. The failure of the record to include applicable Family Court orders is troubling to this Court. When the basis of the Department's prohibition of placement with a parent is another court's order, the parties should ensure that that particular document is in the record for this Court's review.

Q. How did you know they hid them?

A. One day I was getting on the computer to check my Myspace page, and—

Q. You have a Myspace page?

A. Yeah.

Q. Is it good stuff on that page?

A. Yeah.

Q. Okay. All right.

A. And I went to drawing, and they had a file that said, "Letters," and I clicked on it. And it had a copy of all our letters.

Q. And who were they from?

A. My mom.

Q. Okay. Did they ever tell you you got those letters?

A. No.

Q. Did you ask them about it?

A. No.

Q. Was there anything else that bothered you while you were there?

A. Only that we didn't get to go very many places.

Other complaints included the paternal grandparents calling Robin M. names. Skylar H. testified that Brian H. was not present but that she complained to him about the name-calling. The state elicited the testimony of Skylar H. regarding an incident in which Brian H. was alleged to have violated the initial order in this proceeding by being alone with the children.

The adjudicatory order against Brian H. was entered by the circuit court on December 15, 2008, based upon hearings that were held on May 23, 2008, August 19, 2008, and September 16, 2008. The court found that Bryanna H. and Skylar H. were abused and/or neglected children, within the definition of West Virginia Code § 49–1–3(a) [8] (2007) (Repl.Vol.2009) and § 49–1–3(j)(1) (2007) (Repl.Vol.2009) [9]. The lower court made the following findings of fact relating to the testimony of Skylar:

a. She saw April around her grandparents' house on several occasions, although she remained in the truck and did not come inside;

b. She went with her Dad and Bryanna to Blockbuster to pick out a movie, during which time they saw "Uncle Lee." After picking out a movie, Skylar testified that they all went to April G.'s trailer to watch the movie with her. This did not constitute supervised visitation as Brian H. had the girls in his custody alone, without his parents or other suitable persons present;

c. Her father, alone, took her to school, McDonald's, and Kroger;

d. Her Dad, grandparents, and aunt would not let the girls have the cards and letters from their mother;

e. Her grandparents and aunt would make the girls stand and sit in the corner for extended periods of time, sometimes over an hour, as punishment;

---

**8.** The statutory definition of abused child in W. Va.Code § 49–1–3(a) is as follows:

"Abused child" means a child whose health or welfare is harmed or threatened by:
(1) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home; or
(2) Sexual abuse or sexual exploitation; or
(3) The sale or attempted sale of a child by a parent, guardian or custodian in violation of section sixteen, article four, chapter forty-eight of this code; or
(4) Domestic violence as defined in section two hundred two, article twenty-seven, chapter forty-eight of this code.

**9.** (j)(1) "Neglected child" means a child:

(A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian; or
(B) Who is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian.

f. Her grandparents would call her mother derogatory names, (sic) when she reported this to her Dad, he did nothing about it and accused her of lying;

g. A pair of tennis shoes given to Bryanna by her mother were urinated on by the dog and her grandparents and/or her Dad would not wash them and made Bryanna wear them to school where the other children called her names because of the smelly shoes;

h. Her Dad did not spend much time with either of the girls because of his work schedule (9:00 p.m. to 6:00 a.m. Monday through Friday). After he got off work he would apparently go to sleep and then wake up around 3:00 p.m. and pick up April's kids, take them to her house, and then come to his parent's home and only spend a short time with the girls. After spending only a short time with the girls at his parents' house, Brian H. would go running around until reporting to work at 9:00 p.m.

The court order concluded that there was clear and convincing evidence that Bryanna H. and Skylar H. had suffered emotional abuse by the appellant, Brian H., by his failure to make sure that the children were not being mentally abused and that appropriate supervision was being given. The adjudicatory order also stated that there was clear and convincing evidence that the children had been neglected by Brian H. by the "threat of harm to their mental and physical health" by Brian H., by "his present refusal to make sure that this children were not being mentally abused and that appropriate supervision was being given." Despite a finding that the appellant was not directly responsible for these actions,[10] the order also concluded that the "pattern of inappropriate and derogatory remarks regarding the children's mother" as well as keeping the children's correspondence from their mother, the children suffered emotional abuse by the appellant. The adjudicatory order granted the father visitation, but required that his visitation be closely supervised "until he can demonstrate that he will fully comply with agreements and court orders and can demonstrate that he will be fully responsible for their care and protection when they are in custody." The children remained in the legal custody of the Department after the entry of this order.

The circuit court reviewed this matter on January 9, 2009. At this time the lower court granted the appellant an improvement period. A hearing was scheduled for February 3, 2009, to enter the terms and conditions of Brian H.'s improvement period. Both Anthony M. and Brian H. moved for unsupervised visitation with the children. Brian H. objected to the granting of unsupervised visitation to Anthony M. After a hearing on February 20, 2009, and through an order entered February 27, the circuit court granted Brian H.'s motion for unsupervised visitation and denied the stepfather Anthony M.'s request. Anthony M. was, however, allowed to be with the children when Robin M. was present.

The circuit court continued to have regular reviews of the progress of the parties as they worked through their improvement periods. A dispositional hearing for Robin M. and Anthony M. was scheduled for April 21, 2009, as well as a review of the father's improvement period. Prior to the hearing, Brian H. filed a motion for custody of the minor children. In his motion for the children to be

---

10. The adjudicatory order stated, at paragraph 25:

This abuse and neglect was perpetuated by the respondent-father's failure to follow through with complaints by the children that the grandparents were preventing them from getting their mail, calling the respondent-mother inappropriate and derogatory names, and providing inappropriate discipline, thereby knowingly permitting the children to be subjected to this activity. Additionally, this abuse and neglect was perpetuated by the respondent-father's failure to follow through with adequate supervision by permitting the children to be in the presence of April G[.], from whom the respondent-father was to keep the children away.

April G. was the former girlfriend of Brian H. The record indicates that the children did not feel comfortable around April G. but there is no substantive allegation regarding her fitness as a parent or stepparent. As a result of the children's protests, Brian H. was directed by the Department to keep the children away from April G.

placed with him, Brian H. stated that he had been compliant with the improvement period, had appropriate housing for himself and the children and reiterated his concern for the safety of the children if they were placed in the home of Robin M. and Anthony M. Brian H.'s motion contained the following plea to the Court:

As the Court is aware, Mr. M[.] has been terminated to his own children in a prior abuse and neglect proceeding and has a lengthy criminal history including a felony child neglect for which he was incarcerated in the state of Florida. Mr. M[.] tested positive for drugs during the pendency of this proceeding. Mr. M[.] and the Respondent Mother married during the pendency of this proceeding after the mother was made aware of the West Virginia Department of Health and Human Resources (sic) concerns regarding Mr. M[.]

On April 21, 2009, a dispositional hearing was conducted by the circuit court. Robin M. and Anthony M. moved that the children be returned to the custody of their mother, Robin M., and Anthony M. The appellant, Brian H., moved that the children be placed in his custody. The guardian ad litem expressed her approval of the placement of the children with their mother and stepfather. The Department took no position. Brian H. objected to the proposed placement. The lower court found that it was in the best interest for Bryanna H. and Skylar H. to be placed in the physical and legal custody[11] of their mother, Robin M., and granted the motion. As such, the court below denied the motion of Brian H. From this order entered May 1, 2009, Brian H. pursues this appeal.

## II.

### STANDARD OF REVIEW

 Our standard of review of the findings and conclusions of the circuit court in regard to abuse and neglect proceedings is well established.

"Although conclusions of law reached by a circuit court are subject to de novo review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety."

Syl. pt. 1, *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996). With this standard in mind, we review the circuit court's findings and conclusions.

## III.

### DISCUSSION

The appellant raises numerous errors in the lower court's adjudicatory order. These errors may be placed in the following categories: A) insufficient evidence to support the court's findings regarding abuse and/or neglect; B) error in granting the stepfather, Anthony M., an improvement period; C) error in not granting custody of the children to Brian H.; and D) lack of due process because of the delay in adjudicating this matter. Each shall be addressed in turn.

### A.

#### Sufficiency of the Evidence

 At the heart of the claims of Brian H. is the sufficiency of the proof against him

---

11. At the oral argument of this case, the Court learned that one of the parties' children had left her mother's household and was now primarily living with the appellant. The Department did not appear to be aware of this fact. By letter dated March 9, 2010, counsel for the Department provided the Court with updated information regarding the safety of the child in her present placement. We are concerned that the Department did not appear to be cognizant of the significant change in circumstances from the lower court's dispositional order, but express our appreciation to counsel for providing this information.

that led to the circuit court's conclusions that the children were indeed abused and neglected children as a result of his actions. Without the proper evidence, the findings are meaningless. As we have previously stated:

"W. Va.Code, 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Health and Human Resources], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition … by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden." Syllabus pt. 1, *In the Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Additionally, "[t]he standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." Syl. pt. 6, *In re: Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1974).

In its findings and conclusions, the circuit court concluded that the children were abused and neglected not so much by the acts of the appellant himself, but by the acts of others in their lives, especially the children's paternal grandparents, where the children were placed pursuant to court order. These conclusions were reached after more substantive abuse and neglect allegations had been levied against the children's mother and stepfather, including the charge that the stepfather's presence endangered the children's safety, and that the children's mother refused to end his presence around the children. We are ever mindful that any semblance of an issue regarding Brian H.'s fitness as a parent arose only during the course of these proceedings. Brian H.'s role in the children's life, while limited, was not in question at the time that the original petition was filed. This is not to say that this Court condones the father's actions, or as the case may be, his limited role in the children's lives. It is simply to view such behavior against the entire backdrop of these children's lives. We are especially concerned

that the father may have condoned the interference with Robin M.'s communication with the children. Giving the trial court the deference it deserves under our standard of review, we find that there was no error in adjudicating the children abused and/or neglected with respect to their father.

## B.

### Role of Anthony M. in these proceedings

■ The appellant also objected throughout the course of the underlying proceeding to the granting of an improvement period to Anthony M., on standing issues as well as because of the prior termination of his parental rights to two other children. As to the standing, if any, of Anthony M. to participate in these proceedings, Anthony M. obviously was not the parent of any of Robin M.'s children. At the time of the filing of the initial petition alleging Robin M.'s children were abused and neglected, however, Anthony M. resided in the home of Robin M., along with the children, and acted in the role of stepfather to the children. We thus determine that inasmuch as Anthony M. resided with Robin M. and the children prior to the filing of this initial abuse and neglect petition, and in view of his actual involvement in the children's lives, he was a custodian entitled to fully participate in these proceedings. Anthony M. therefore has standing in this matter.

■ We must next address the effect of the prior termination of Anthony M.'s parental rights first as they related to Robin M., and secondly, in his role as a custodian of the children. We note from the outset that this is not a case where the Department would be required to seek the termination of Robin M.'s parental rights because of the previous termination of Anthony M.'s parental rights to his other children. The provisions of West Virginia Code § 49–6–5b (2006) (Repl.Vol. 2009), which detail when the Department must initiate or join in a proceeding to terminate parental rights, would not apply in this case, inasmuch as the children of Anthony M. are not siblings of Robin M.'s children.[12]

---

12. West Virginia Code § 49–6–5b details those circumstances that require the Department to

seek termination of parental rights as follows;

That is not to say, however, that the effect of the prior termination of Anthony M.'s parental rights is not an important point for the circuit court's inquiry, and certainly so if the question is whether to extend to Anthony M. the right to an improvement period. Anthony M.'s presence in the case was attendant to his marriage to the mother of the children and his role as their stepparent. Again, we cannot conclude that it was error for the circuit court to allow Anthony M. to fully participate in these proceedings as the spouse of the children's mother and as their stepfather.

## C.

### Failure to grant Brian H. custody of the children

■ It seems clear throughout this lengthy proceeding that Brian H. was never perceived to be a likely candidate for custody of his biological children. From the beginning of this case, when all allegations regarding the abuse and neglect of these children were related to the conduct of their mother, the children were placed elsewhere. After the petition was amended to reflect conduct that happened during the course of these proceedings, while the Department's focus was on Robin M. and Anthony M., Brian H. complied with the terms and conditions of his improvement period. He was not, however, effectively considered to be a placement for his children. Indeed, though the children were returned to their mother, Brian H. did not have defined custodial time.

We glean from the record that the return of the children to the home of their mother was to restore the children's last placement prior to the intervention of the Department through the abuse and neglect petition. The authority for this position is readily ascertainable. We have stated:

(a) Except as provided in subsection (b) of this section, the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights: ... (3) If a court has determined the parent has committed murder or voluntary manslaughter of another of his or her children or the other parent of his or her children; has attempted or conspired to commit such mur-

At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. pt. 6, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991).

■ The right of a parent to the custody of his or her child is foremost in our jurisprudence. We have repeatedly emphasized the importance of parental rights and have stated:

" ' "A parent has the natural right to the custody of his or her infant child, and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts." Syllabus, *State ex rel. Kiger v. Hancock*, 153 W.Va. 404, 168 S.E.2d [798] (1969).' Syllabus pt. 2, *Hammack v. Wise*, 158 W.Va. 343, 211 S.E.2d 118 (1975)."

Syl. pt. 1, *Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 356 S.E.2d 464 (1987).

■ We have further held:
"In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions."

der or voluntary manslaughter or has been an accessory before or after the fact of either crime; has committed unlawful or malicious wounding resulting in serious bodily injury to the child or to another of his or her children or to the other parent of his or her children; or the parental rights of the parent to a sibling have been terminated involuntarily.

Syl. pt. 1, *In re: Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1974).

With these standards in mind, we now review whether the circuit court erred in placing the children with Robin M. and Anthony M., as opposed to placement with their father, Brian H. The circuit court's order concludes that it was in the best interests of the children to be placed with their mother, Robin M., and her husband, Anthony M. There is no mention whatsoever of why the home of Brian H. was not an appropriate placement for the children, or why it was apparently not even considered. It should have been. Hence, the record before us gives an insufficient view of the rationale of the lower court in making its determination. As such, we are limited in our review and consideration of the best interests of the children. In light of one child's return to her father's home despite the underlying order, we conclude that it was error to summarily place the children in the home of Robin M. and Anthony M. without consideration of the placement of the children with Brian H. The circuit court should forthwith reconvene a dispositional hearing to determine whether the children should live with Robin M. or Brian H. Such a hearing should also consider any updated information on the children and their best interests.

### D. Timeliness of Adjudication

The appellant has raised an issue regarding the length of time between the filing of the amended petition below and the final order in this matter. In light of the resolution of the other issues herein, we do not believe it to now be necessary to address this concern.

### IV.

### CONCLUSION

For the foregoing reasons, we conclude that the circuit court did not commit error in finding that Skylar H. and Bryanna H. were abused and/or neglected children as a result of their father's actions. We find error in the dispositional phase of this proceeding in that the circuit court failed to adequately consider the home of Brian H. as a placement for Skylar H. and Bryanna H. We therefore affirm that portion of the circuit court's order that adjudicated the children abused and neglected by the acts of Brian H. We reverse that portion of the order of the circuit court which placed the children in the home of Robin M. and Anthony M. We therefore remand this matter to the circuit court for a hearing on an appropriate placement of the children, with appropriate consideration being given to the father, Brian H., as the custodial parent. The mandate of the Court shall issue forthwith.

**Affirmed in part, reversed in part and remanded.**