**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **A.M. and E.L.**

**No. 23-363** (Wood County CC-54-2022-JA-169 and CC-54-2022-JA-170)


**MEMORANDUM DECISION**


Petitioner Mother M.B.[1] appeals the Circuit Court of Wood County's March 28, 2023, order terminating her parental rights to A.M. and custodial and guardianship rights to E.L.,[2] arguing that the circuit court erred in terminating her parental rights to A.M., terminating nonexistent rights to E.L., and denying post-termination visitation with E.L. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In June 2022, the DHS filed a petition alleging that the petitioner abused controlled substances and allowed her then-seventeen-year-old daughter, A.M., and A.M.'s then-one-year-old daughter, E.L., to reside in deplorable living conditions. According to the petition, the petitioner used drugs while caring for E.L. on multiple occasions, left E.L. alone, and verbally and physically abused A.M. Additionally, the petitioner's home was filled with trash, housed seven dogs, and smelled like animals. The petition further alleged that the petitioner had bizarre behaviors and paranoid thoughts, including her beliefs that her husband was a "cartel leader" with ties to the police and Child Protective Services; that A.M. could talk "through her mind" to E.L., performed "witch spells" by lighting a candle, and molested E.L. by putting ointment on a rash; and that people were coming in through a window and raping A.M. and E.L. Shortly before the petition was filed, A.M. obtained a domestic violence protection order against the petitioner due to a physical altercation between A.M. and the petitioner in the presence of E.L.

---

[1] The petitioner appears by counsel Matt McCase. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Michael D. Farnsworth Jr. appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

At an adjudicatory hearing in September 2022, the petitioner stipulated that she "abused controlled substances to the extent that proper parenting skills had been impaired" and "allow[ed] the children to live in deplorable living conditions." Based on her stipulation, the circuit court found the children to be abused and neglected and adjudicated the petitioner as an abusive and neglecting parent. At the hearing, the petitioner agreed to a one-year domestic violence protective order ("DVPO") prohibiting contact with A.M. The circuit court granted the petitioner a six-month post-adjudicatory improvement period, the terms and conditions of which included parenting and adult life skills classes, psychological and substance abuse evaluations, drug screens, and therapy.

At a review hearing in November 2022, the DHS informed the circuit court that the petitioner was not complying with the terms and conditions of her improvement period as she was not participating in services or responding to interventions by the DHS or service providers. The DHS recommended ending the improvement period due to the petitioner's noncompliance. In January 2023, the DHS filed a progress report with the circuit court that detailed the petitioner's continued nonparticipation in services. On March 15, 2023, the DHS filed another progress report explaining that the petitioner attended two parenting classes in February 2023 and submitted to several drug screens. Despite the petitioner's minimal participation, she continued to abuse drugs and disclosed continued use of methamphetamine and fentanyl to a service provider. Furthermore, the report explained that the petitioner had not yet started an inpatient or outpatient drug treatment program and had no interest in treating her substance use disorder. The report also noted that the petitioner's mental health was unstable and that she was unable to care for others. The report highlighted an incident where the petitioner "was unable to find her way home and was lost the entire night" after an appointment. The report recommended termination of the petitioner's parental rights because the petitioner "ha[d] shown that she [was] unwilling or unable to comply with a reasonable family case plan and ha[d] not shown a significant change in circumstances."

The dispositional hearing was held on March 20, 2023, which A.M attended. Without objection by the petitioner, the circuit court took judicial notice of the "entire record" and admitted the DHS's March 2023 progress report, a court appointed special advocate ("CASA") report, and the petitioner's parental fitness evaluation as evidence.[3] The DHS rested its case without presenting any witnesses. The petitioner made an oral motion for a post-dispositional improvement period but did not present any evidence or witnesses in support. During closing arguments, counsel for the DHS acknowledged the petitioner's recent participation in services but argued that she continued to use methamphetamine and fentanyl throughout the improvement period and refused treatment for her substance use disorder. Counsel for the petitioner conceded that the petitioner had eleven positive drug screens but noted that she also had eight negative screens. Nonetheless, the petitioner's counsel asked the court for "leniency in allowing her services to remain open for her to get better with the substance abuse." Based on the evidence received, the circuit court denied the petitioner's motion for a post-dispositional improvement period because, despite receiving services, the petitioner had "made little to no progress" since the petition was filed. The circuit court found that the petitioner's positive drug screens demonstrated that she "continued to have substance abuse issues with methamphetamine and fentanyl and . . . failed to take any steps to correct her substance abuse." The court further found that the petitioner had "exhibited concerning mental health behaviors and ha[d] refused to participate in the recommended in-patient treatment."

---

[3] The CASA report and the parental fitness evaluation were not included in the appendix.

As such, the circuit court found there was no reasonable likelihood the petitioner could remedy the conditions that led to the filing of the petition in the near future and that termination of the petitioner's parental rights was necessary for A.M.'s welfare and to serve her best interests. Accordingly, the petitioner's parental rights to A.M were terminated. The circuit court also terminated "any custodial or guardianship rights" of the petitioner to E.L. and denied post-termination visitation with both children.[4] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in terminating her parental rights to A.M. because "the court failed to hold an appropriate dispositional hearing." The petitioner contends that she was deprived of her right to cross-examine witnesses because the DHS failed to present testimonial or other sworn evidence at the dispositional hearing. In support of this contention, the petitioner relies solely on *In re C.E.*, No. 20-0814, 2021 WL 1549970 (W. Va. Apr. 20, 2021) (memorandum decision), where we found that the circuit court's "fail[ure] to require the [DHS] to present a single witness in support of its position at disposition" prevented the father from exercising his right to cross-examination. *Id.* at *3. However, the petitioner's reliance on *In re C.E.* is misplaced as the cases are factually distinct. Critically, in *In re C.E.*, the DHS presented *no evidence* at the dispositional hearing. *Id.* at *3. Here, in contrast, the DHS presented three reports that were admitted as evidence at the dispositional hearing.[5] As such, the petitioner had the opportunity to call the authors of the reports as witnesses. The petitioner's abdication of this opportunity does not equate to a denial of her right to cross-examination. Therefore, we find that the petitioner is not entitled to relief in this regard.

The petitioner further argues that the circuit court erred in terminating her parental rights because the DHS failed to present sufficient evidence. The petitioner first contends that the DHS failed to prove by clear and convincing evidence that she could not substantially correct the conditions of abuse and neglect in the near future because no testimony was presented at the dispositional hearing. This Court has explained, however, that there is no "'particular manner or mode of testimony or evidence by which the [DHS] is obligated to meet [its] burden [of proof].'" *In re K.S.*, 246 W. Va. 517, 526, 874 S.E.2d 319, 328 (2022) (quoting Syl. Pt. 1, in part, *In Interest*

---

[4] A.M. has reached the age of majority. The permanency plan for E.L. is to remain with her parents.

[5] The petitioner further argues that the reports were hearsay, which prejudiced and deprived her of her right to cross-examination. We note, however, that the petitioner fails to cite to any portion of the record wherein she objected to the admission of the reports as evidence. Rule 10(c)(7) of the Rules of Appellate Procedure requires that a petitioner's argument must "contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." As such, we decline to consider this argument on appeal. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (quoting *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)) ("Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.").

*of S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981)). The reports admitted as evidence at the dispositional hearing demonstrated that, after receiving six months of services, the petitioner continued abusing substances and refused treatment for her pervasive substance abuse issues. Thus, we find that the DHS presented clear and convincing evidence that the petitioner could not substantially correct the conditions of abuse and neglect in the near future. *See* W. Va. Code § 49-4-604(d)(1) (explaining that "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" includes circumstances where "[t]he abusing parent . . . ha[s] habitually abused or [is] addicted to . . . controlled substances or drugs, . . . and the person . . . [has] not responded to or followed through the recommended and appropriate treatment.").

The petitioner next contends that the DHS failed to prove by clear and convincing evidence that termination of her parental rights was necessary for A.M.'s welfare. The petitioner asserts that because A.M. was turning eighteen shortly after the dispositional hearing that A.M.'s welfare was no longer "seriously threatened." We find no merit in this argument. We have explained that "a child's 'welfare' . . . concerns his or her personal well-being." *In re A.P.*, 245 W. Va. 248, 257, 858 S.E.2d 873, 882 (2021). The record shows that, at the time of the dispositional hearing, A.M. had an active DVPO against the petitioner that extended beyond A.M.'s eighteenth birthday. In addition, the court found that the petitioner continued to exhibit concerning mental health behavior and refused the recommended in-patient treatment. Based on this evidence, we find that the circuit court had a sufficient basis upon which to find that A.M.'s welfare necessitated termination of the petitioner's parental rights.

The petitioner also argues that the circuit court erred in terminating her rights instead of imposing a less restrictive disposition pursuant to West Virginia Code § 49-4-604(c)(5). We disagree. West Virginia Code § 49-4-604(c)(6) permits courts to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." As explained above, the circuit court properly made these requisite findings. Accordingly, we find no error in the circuit court's termination of the petitioner's parental rights.[6]

_____

[6] The petitioner additionally argues that the termination of her parental rights was erroneous because the circuit court failed to ascertain and consider A.M.'s wishes. *See* W. Va. Code § 49-4-604(c)(6)(C) (requiring circuit courts to "give consideration to the wishes of a child 14 years of age or older . . . regarding the permanent termination of parental rights"). We find, however, that the petitioner has failed to establish reversible error. Although the petitioner is correct that the child's explicit wishes were not placed on the record for consideration, the record nonetheless establishes that the circuit court considered extensive evidence about the violent relationship between the petitioner and A.M., including the fact that A.M. had an active DVPO against the petitioner that extended beyond her eighteenth birthday. In short, this evidence spoke directly to the child's express wishes to have no contact with the petitioner in order to ensure her safety. Further, A.M. was present for and represented by counsel at the dispositional hearing but opted not to elaborate further on the evidence already offered. Therefore, under the specific and limited circumstances of this case, we find that the circuit court's failure to consider A.M.'s wishes does not constitute a substantial disregard or frustration of the statute such that vacation of the dispositional order is warranted. *See* Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 624, 558 S.E.2d 620, 623 (2001) (requiring vacation of dispositional orders "[w]here it appears from the record

4

Finally, the petitioner argues that it was error for the circuit court to terminate her custodial and guardianship rights to her granddaughter E.L. because she had no such rights for the court to terminate.[7] The record is clear, however, that the petitioner exercised custodial rights to E.L. as E.L. resided in the petitioner's home when the petition was filed. *See* W. Va. Code § 49-1-204 (defining "[c]ustodian" as "a person who has or shares actual physical possession or care and custody of a child, regardless of whether that person has been granted custody of the child by any contract or agreement"); *see, e.g.*, *In re Z.S.-1*, 249 W. Va. 14, 22 n.16, 893 S.E.2d 621, 629 n.16 (2023) (noting erroneous dismissal of non-biological parent who resided in the home with the subject child and who "had cognizable rights as the child's guardian and/or custodian" that were properly subject to termination under statute); *In re Bryanna H.*, 225 W. Va. 659, 669, 695 S.E.2d 889, 899 (2010) (finding that the non-biological father who resided in the home with the children was a "custodian" for purposes of abuse and neglect proceedings). Furthermore, although the petitioner does not meet the definition of "legal guardian" under West Virginia Code § 49-1-204, the circuit court's termination of her "nonexistent" guardianship rights does not amount to reversible error. Accordingly, we find that the circuit court did not err in terminating the petitioner's custodial rights to E.L.

For the foregoing reasons, the circuit court's March 28, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: February 4, 2025

**CONCURRED IN BY**:
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Charles S. Trump IV

---

that the process [for abuse and neglect proceedings] has been substantially disregarded or frustrated"). Moreover, as explained above, the termination of the petitioner's rights was otherwise appropriate.

[7] The petitioner also argues that the circuit court erred in denying her post-termination visitation with E.L. as it "usurped the right of [E.L.'s parents] to make decisions regarding the care of their child and who they may be exposed to." The record on appeal clearly demonstrates that the parents of E.L. were part of these proceedings whose interests were represented by an attorney. Thus, the petitioner lacks standing to assert an assignment of error on behalf of another party. *See Kanawha Cty. Pub. Library Bd. v. Bd. of Educ. of Cty. of Kanawha*, 231 W. Va. 386, 398, 745 S.E.2d 424, 436 (2013) (quoting *Snyder v. Callaghan*, 168 W. Va. 265, 279, 284 S.E.2d 241, 250 (1981)) (explaining that "[t]raditionally, courts have been reluctant to allow persons to claim standing to vindicate the rights of a third party on the grounds that third parties are generally the most effective advocates of their own rights and that such litigation will result in an unnecessary adjudication of rights which the holder either does not wish to assert or will be able to enjoy regardless of the outcome of the case."). As such, the Court declines to address this assignment of error on appeal.

**DISSENTING:**

Chief Justice William R. Wooton
Justice C. Haley Bunn

WOOTON, Chief Justice, dissenting:

I respectfully dissent, as I believe the majority's memorandum decision glosses over two issues that should be more thoroughly explored by placing the case on the Rule 19 docket and issuing a signed opinion.

First, inasmuch as A.M. turned eighteen during the course of the proceedings below, the circuit court was statutorily required to consider her wishes with respect to the disposition of her mother's case. *See* Syl. Pt. 4, in part, *In re J.A.*, 242 W. Va. 226, 833 S.E.2d 487 (2019) ("When determining whether to permanently terminate the parental, custodial and guardianship rights and responsibilities of an abusing parent, West Virginia Code § 49-4-604(b)(6)(C) (2019) requires a circuit court to give consideration to the wishes of a child who is fourteen years of age or older or otherwise of an age of discretion as determined by the court."). Here, the court did not do so. Ordinarily, a remand to the court for this purpose would be required; however, it is unclear in our jurisprudence whether the court could exercise jurisdiction over A.M. on remand, as she has reached the age of majority. This brings a broader question into focus: in a case where the circuit court has erred, can this Court afford relief – other than vacation of the circuit court's dispositional order and dismissal of the case – after the subject child has turned eighteen.

I am also concerned by the majority's failure to squarely address whether the DHS can satisfy its burden of proof at a dispositional hearing simply by entering hearsay reports into evidence. The majority ducks this issue by noting, in footnote five, that the petitioner mother, M.B., "fail[ed] to cite to any portion of the record wherein she objected to the admission of the reports as evidence." Notwithstanding the petitioner's failure to adhere to the requirements of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, this Court should have taken the opportunity to make a strong statement that admission of a few hearsay documents is insufficient as a matter of law to satisfy the DHS' burden of proof in a case where it seeks termination of parental rights. *See* Syl. Pt. 3, in part, *In re K. S.*, 246 W. Va. 517, 874 S.E.2d 319 (2022) ("The standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof.").

For these reasons, I respectfully dissent.

BUNN, Justice, dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the errors alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, I respectfully dissent.