**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**March 25, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **B.E., E.W., R.S., and O.S.**

No. 23-540 (Braxton County 23-JA-24, 23-JA-25, 23-JA-26, and 23-JA-27)

### MEMORANDUM DECISION

Petitioner S.E.,[1] the biological mother of B.E., E.W., R.S., and O.S., appeals[2] the August 10, 2023, order of the Circuit Court of Braxton County adjudicating her as an abusing and/or neglecting parent. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing and/or neglecting parent for permitting her six-year-old daughter, E.W., to travel to Texas on multiple occasions to stay in the home of a registered child sex offender, unsupervised, for an extended period of time. Upon our review, as it relates to E.W., we find no error in the circuit court's decision to adjudicate petitioner as a neglecting parent under the circumstances, and we affirm the circuit court's order to that extent. However, because there was no evidence that petitioner abused or neglected B.E., R.S., or O.S., we vacate the circuit court's order to the extent it adjudicated petitioner as abusing or neglecting these children. We, therefore, affirm, in part, and vacate, in part, the adjudicatory order. This case satisfies the "limited circumstance" requirement of Rule 21(d) of the Rules of Appellate Procedure for resolution in a memorandum decision.

In June 2023, the DHS filed an amended abuse and neglect petition against petitioner and others.[3] The amended petition alleged that, immediately upon the birth of B.E. in December 2022,

---

[1] We use initials in cases involving sensitive facts to protect the identities of those involved. *See* W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Additionally, under West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services (DHS).

[2] Petitioner appears by counsel Jonathan Fittro. The DHS is represented by Attorney General John B. McCuskey and Assistant Solicitor General Caleb A. Seckman. Because a new Attorney General took office during the pendency of this appeal, his name has been substituted as counsel for the DHS. Julia R. Callaghan appears as the children's guardian ad litem.

[3] The amended petition included allegations of abuse and neglect of B.E. against respondent T.E., B.E.'s father, and respondents B.G. and S.G., who had become B.E.'s temporary guardians. *See* discussion *infra*. The amended petition also included allegations against other adult respondents as to their own children as well as to petitioner's children. Because the instant appeal relates solely to the parental rights of petitioner to her four children, B.E., E.W., R.S., and O.S., we need not address the proceedings as they relate to the other parties as those proceedings are not relevant to the resolution of this appeal.

petitioner executed a release permitting respondents B.G. and S.G. to take physical custody of B.E. with the intent of allowing them to adopt him. Petitioner subsequently changed her mind about the adoption and, in May 2023, petitioner sought to have B.E. returned to her. When B.G. and S.G. refused to transfer custody, petitioner contacted law enforcement. An emergency hearing was conducted that resulted in the circuit court appointing S.G. and B.G. as temporary guardians of B.E. and ordering the DHS to conduct an investigation. Ultimately, the amended petition for abuse and neglect was filed alleging that petitioner and respondent T.E., B.E.'s father, failed to provide a fit and suitable home, support, or maintenance for the child B.E. and, therefore, abandoned him. Also included in the amended petition were allegations that petitioner failed to protect her children by permitting T.E. to reside in the home while he was abusing controlled substances. Finally, the amended petition alleged that petitioner placed six-year-old E.W. at risk of abuse and neglect and failed to protect her by allowing her to visit petitioner's father, J.D., in Texas, unaccompanied, despite knowing that J.D. is a registered child sex offender, "having been convicted of sexual contact with a 7 year old female child and despite the [DHS] having previously told [petitioner] that she should not permit her children to be around [J.D.]." Based upon the allegations in the amended petition, the circuit court found that imminent danger to the physical and mental well-being of the children existed and that no reasonable available alternative to their removal existed at that time. The children were placed in the temporary legal and physical custody of the DHS.

A preliminary hearing was conducted on June 7, 2023, and upon its conclusion, the circuit court determined that imminent danger to the children continued to exist and ordered continued placement of the children in the custody of the DHS.

A contested adjudicatory hearing was conducted on July 24, 2023. Petitioner testified that, in 2003, J.D. was charged in the State of Texas with the felony offense of indecency with a child by contact, in violation of Texas Penal Code § 21.11(a)(1).[4] The victim was the seven-year-old daughter of J.D.'s then girlfriend.[5] According to petitioner, J.D. was "never convicted" of the charged offense but rather, received a deferred adjudication and served ten years of probation. Petitioner testified that her half-sister was permitted to live with J.D. and his wife during that time. The Texas Public Sex Offender Registry ("the registry"), which was introduced at the adjudicatory hearing, indicated that J.D.'s "risk level" is "low." [6] J.D. is required to register as a sex offender for life.

Petitioner admitted that she was advised during a previous family court proceeding not to send E.W. to visit J.D. "because he was a risk based upon his sex offense," but claimed that the

---

[4] At the time, Texas Penal Code §21.11(a)(1) provided: "(a) A person commits an offense if, with a child younger than 17 years of age and not the person's spouse, whether the child is of the same or opposite sex, the person: (1) engages in sexual contact with the child or causes the child to engage in sexual contact[.]"

[5] At the time, petitioner was four years old and had no contact with J.D. According to petitioner, she did not have contact with J.D. until she was eighteen years old. Petitioner was twenty-four years old at the time of the adjudicatory hearing in this case.

[6] The registry does not indicate that J.D. received a deferred adjudication.

family court never advised her that allowing her children to "be around" J.D. would constitute neglect. Petitioner also referenced a "CPS open investigation from last year" during which she was ordered not to allow E.W. to visit J.D. According to petitioner, "once that was over, nobody stated that I couldn't let her go [to Texas]."[7]

Petitioner testified that she permitted E.W. to visit J.D. unaccompanied for approximately six weeks during the summer[8] on at least three occasions and that she had no concerns about E.W.'s safety around J.D. because she had never seen him act inappropriately around children and because her children had never disclosed any inappropriate behavior. Nonetheless, petitioner testified, E.W. was never alone with J.D. during her visits because petitioner's stepmother works from home and "stays at home constantly." However, on cross-examination, petitioner conceded that she could not know with certainty that E.W. was never alone with J.D.

As to the child B.E., petitioner testified that although she originally intended to allow B.G. and S.G. to adopt B.E., she later changed her mind and sought to have the child returned to her.

Finally, petitioner testified that she and T.E. were not a couple at the time he tested positive for controlled substances and that during the time T.E. was staying at her home, he did not appear to be under the influence of drugs or to be a danger to her children.

By order entered August 10, 2023, the circuit court concluded that the State failed to prove that petitioner abandoned B.E. by placing him in the care of B.G. and S.G. and further failed to prove that petitioner "knowingly permitted [T.E.] to reside in the home and care for the children while he was using controlled substances." However, as to E.W., the circuit court found that petitioner's father, J.D., "has a record as a child predator and sex offender" and that by permitting E.W. to visit J.D. in his home in Texas for an extended time period, unsupervised, petitioner placed E.W. at risk of abuse and neglect. The circuit court adjudicated petitioner as abusing and/or neglecting all four children. This appeal followed.

In abuse and neglect cases, this Court is required to review the circuit court's findings of fact for clear error and conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly

---

[7] No additional information about that CPS investigation is provided in the appendix record.

[8] E.W. was in Texas visiting J.D. at the time the amended petition was filed. She was immediately returned to West Virginia.

erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In Int. of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing and/or neglecting parent for permitting E.W. to stay in the home of a registered sex offender. Petitioner concedes that permitting a sex offender to have unsupervised contact with a child may create a risk of harm that could constitute neglect of that child. However, she contends that absent clear and convincing evidence that the offender is an actual danger to the child, adjudicating the parent because he or she permitted contact between the child and offender is error. Petitioner argues that J.D. "pled" to the crime of indecency with a child by contact, entered into a deferred adjudication, and served ten years of probation, and during that time was permitted to live with his minor child who was the same age as the victim. Petitioner argues that the circuit court erred in finding J.D. to be "a child predator and sex offender," that her decision to permit E.W. to stay with J.D for an extended visit was reasonable, and that her adjudication as an abusing and/or neglecting parent of the child E.W. should be reversed. We disagree and find no error in the circuit court's conclusion as to E.W.

The evidence presented at the adjudicatory hearing supports the adjudication of petitioner as neglecting E.W.[9] J.D. previously committed the felony offense of indecent contact with his then-girlfriend's seven-year-old daughter, who was of a similar age to E.W. As a result, J.D. is a child sex offender who is required to register as such for life. Petitioner sent E.W. to Texas for extended, unsupervised visits with J.D. on multiple occasions. She was twice warned not to do so, having been told by the family court that J.D. "was a risk based upon his sex offense." Nonetheless, petitioner sent E.W. to Texas alone for six weeks, conceding at the adjudicatory hearing that although she believed that J.D. was never alone with E.W., she could not know with certainty that J.D. never has unsupervised contact with E.W.

Upon our review, we decline to disturb the circuit court's finding that petitioner neglected E.W. under these circumstances,[10] as we are not "left with the definite and firm conviction that a mistake has been committed." Syl. Pt. 1, in part, *In Int. of Tiffany Marie S.*, 190 W. Va. at 225, 470 S.E.2d at 179. We "defer to the [trier of fact's] credibility determinations and inferences from

---

[9] "Neglected child" is defined in West Virginia Code § 49-1-201 (2015) as, inter alia, "a child: (A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary . . . supervision . . . ."

[10] *See* W. Va. Code § 49-4-601(i) (requiring a circuit court's finding of abuse or neglect to be "based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.")

the evidence"[11] because, as a reviewing court, we lack the benefit of "observ[ing] the demeanor of the witnesses and other nuances of a trial that a record simply cannot convey."[12] *See State ex rel. Diva P. v. Kaufman*, 200 W. Va. 555, 562, 490 S.E.2d 642, 649 (1997) ("The critical nature of unreviewable intangibles justify the deferential approach we accord findings by a circuit court.")*, superseded by statute on other grounds*, W. Va. Code § 49-4-610(9) (2015). We thus conclude that the circuit court's finding "is plausible in light of the record viewed in its entirety." Syl. Pt. 1, in part, *In Int. of Tiffany Marie S.*, 190 W. Va. at 225, 470 S.E.2d at 179. Accordingly, we affirm the circuit court's order to the extent it found petitioner to be a neglecting parent as to the child E.W.

While we affirm the circuit court's order as it relates to E.W., we vacate the order to the extent it adjudicated petitioner as abusing and/or neglecting B.E., R.S., and O.S.

> To exercise subject matter jurisdiction, the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition. Due to the jurisdictional nature of this question, generalized findings applicable to all children named in the petition will not suffice; the circuit court must make specific findings with regard to *each* child so named.

Syl. Pt. 3, in part, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023). The circuit court failed to make the requisite findings as to B.E., R.S., and O.S. To the contrary, the circuit court concluded that the State failed to prove that petitioner abandoned B.E. by placing him in the care of B.G. and S.G. and further failed to prove that petitioner knowingly permitted T.E. to reside in petitioner's home and care for the children while he was using controlled substances. Further, the evidence at the adjudicatory hearing clearly established, and the circuit court expressly found, that at the time the amended petition was filed, only E.W. had been sent to Texas for an extended, unsupervised visit with J.D.[13] For these reasons, it was error for the circuit court to adjudicate petitioner as abusing and/or neglecting B.E., R.S., and O.S.[14]

---

[11] *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995).

[12] *Gum v. Dudley*, 202 W. Va. 477, 484, 505 S.E.2d 391, 398 (1997).

[13] "Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an 'abused child' or a 'neglected child' must be based upon the conditions existing at the time of the filing of the abuse and neglect petition." Syl. Pt. 8, in part, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022).

[14] We are aware that the circuit court subsequently granted petitioner a post-adjudicatory improvement period as to all the children. *See* W. Va. Code § 49-4-610(2) (2015) ("After finding that a child is an abused or neglected child pursuant to section six hundred one of this article, a court may grant a respondent an improvement period[.]"). Petitioner has since successfully completed the improvement period, and all the children have been returned to her physical and

Continued . . .

For the foregoing reasons, we affirm, in part, and vacate, in part, the decision of the circuit court.

Affirmed, in part, and Vacated, in part.

**ISSUED**: March 25, 2025

**CONCURRED IN BY:**
Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Charles S. Trump IV

**Dissenting:**
Justice C. Haley Bunn

**BUNN, Justice, concurring in part and dissenting in part:**

I agree with my colleagues' decision to vacate the circuit court's August 10, 2023 order to the extent that it adjudicated the petitioner as abusing and/or neglecting her children, B.E., R.S., and O.S. The circuit court failed to make the requisite findings to acquire jurisdiction over those children, and the majority correctly vacates the order as to them. However, I depart from the majority's decision to affirm the circuit court's adjudication of the petitioner as abusing and/or neglecting her child E.W. The circuit court's order lacks sufficient findings to demonstrate that the DHS carried its burden of proof as to E.W. This ruling should also be vacated, and the case remanded for the circuit court to make adequate findings on this issue.

The petitioner was the only witness called by the DHS to testify in relation its allegation that she abused and/or neglected E.W. Through its direct examination of petitioner, the DHS submitted a Texas Public Sex Offender Registry entry for petitioner's father, J.D.[15] The

---

legal custody. While the circuit court was without jurisdiction to grant a post-adjudicatory improvement period as to B.E., R.S., and O.S., we note that it had the authority to grant petitioner a preadjudicatory improvement period as to these children pursuant to West Virginia Code § 49-4-610(1).

[15] This was a two-page document that appears to have been printed from a website established by the Texas Department of Public Safety.

registry entry identifies J.D.'s offense as "indecency with a child by contact,"[16] and describes the victim as a seven-year-old female.[17] DHS's counsel stated that J.D. had been convicted of the offense, yet nothing on the registry entry confirms that conclusion. The information on J.D.'s judgment states only "10Y discharged from probation/community supervision." The recorded disposition date is June 20, 2003, twenty years prior to the July 2023 adjudicatory hearing, and the entry bears no indication of repeat offenses. According to the registry entry, J.D. must register as a sex offender for his lifetime, and his risk level is assessed as "low."

The petitioner further testified that while she was "part of" a prior family court case, she was advised to not allow her children to visit J.D.[18] "because he was a risk based upon his sex offense." Nevertheless, the petitioner conceded that she allowed E.W. to travel to Texas on June 1, 2023, with J.D., his wife, and their adult daughter, who is petitioner's half-sister. The petitioner explained that E.W. spends six weeks in Texas every summer.

During cross examination by her own counsel the petitioner testified that, while J.D. did not raise her, she had developed a close relationship with him. The petitioner had never observed anything that caused her to believe J.D. presented a danger to E.W., who previously spent five summers visiting him in Texas. E.W. visited without the petitioner on three occasions, and the petitioner twice joined her. Before the family court prohibited the petitioner's younger children R.S. and O.S. from such visits, R.S. had gone along twice and O.S. once. The petitioner stated that the children never gave her a reason to suspect that J.D. acted inappropriately during their visits. Petitioner also testified that during an open CPS investigation in 2022 she was told not to allow the children to go to Texas, but once the investigation was over, she was not told that the prohibition remained in place.

Regarding J.D.'s 2003 offense, the petitioner testified about her understanding that J.D. entered a plea but was never convicted of the offense, though he served ten years of probation

---

[16] The registry entry provides a citation for the Texas Penal Code provision associated with J.D.'s offense, but it does not provide the text of the statute. Likewise, DHS did not submit the text the statute or otherwise describe the offense on the record.

[17] The petitioner averred that J.D. also has a child with the victim's mother and, at the time of his offense, he and his wife were exercising visitation with that child, who was the victim's younger half sibling. According to petitioner's testimony, the victim heard that J.D. and his wife planned to seek custody of her younger half-sibling and "got mad and upset and pushed these allegations."

[18] In the exchange between DHS's counsel and the petitioner, neither of them identified the family court judge as the source of this advice; in fact, they fail to identify who provided it. Furthermore, when petitioner was cross examined by her own counsel, she testified that the family court proceeding pertained to custody of R.S. and O.S., which she shares equally with their father, J.S. The petitioner explained that she and J.S. each have the children for full, alternating weeks, and J.S. did not want the children to go to Texas because it would interfere with his parenting time. Therefore, the family court ostensibly ordered that R.S. and O.S. could not go to Texas. The family court's order is not part of the appendix record for this appeal, and nothing in the record indicates that E.W. was a subject of that proceeding.

and is required to remain on the sex offender registry.[19] Additionally, another child of J.D.'s, a female who was seven in 2003, the same age as J.D.'s victim, was permitted to remain with J.D. in his home.

Following argument by counsel, the court ruled on the record that,

> With regard to the issue of the adult respondent, [the petitioner's] father, it's clear that irregardless [sic] of whether he was adjudged and adjudicated guilty or whether it was a pretrial diversion or whatever it may be, he has a record of being a child predator and a sex offender, and I believe that any parent who would allow their child to live in the home of somebody who has a sex offender requirement of registration does commit abuse and neglect by doing so, and I make that specific finding.

> And based upon that, I adjudge and adjudicate [the petitioner] guilty of abuse and neglect involving that act. I believe that was very -- extremely poor judgment.

Thereafter, the circuit court entered its August 10, 2023 order formally adjudicating the petitioner "as an abusive and/or neglectful parent" and concluding that E.W. is "abused and/or neglected." The court made only two findings: (1) the petitioner's father, J.D., "has a record as a child predator and sex offender," and (2) the petitioner "permitted [E.W.] to go to the State of Texas to visit [J.D.] in his home for an extended period of time." Based on these two meager findings, the circuit court concluded that the petitioner "placed [E.W.] at risk of abuse and neglect by permitting her to stay with [J.D.]," declaring that "[a]ny parent [who] permits a child to reside in the home of a child sex offender creates a risk to that child."

Both on the record and in its written order, the circuit court based its determination that J.D. presented a threat to E.W.'s welfare solely on the fact that J.D. is a registered sex offender. By ruling in this manner, the circuit court applied a per se standard for adjudication and absolved the DHS of its duty to prove the allegations of abuse and neglect. This overreaching standard does

---

[19] Petitioner's counsel compared the arrangement to a deferred adjudication. *See, e.g.*, W. Va. Code § 61-11-22a (allowing circuit and magistrate courts to, in some circumstances, defer acceptance of a guilty plea entered for a felony or misdemeanor, defer further adjudication of the plea, and release the defendant upon such terms and conditions as the court deems just and necessary); Tex. Code Crim. Proc. art. 42.12 § 5(a) (eff June 18, 2003) ("[W]hen in the judge's opinion the best interest of society and the defendant will be served, the judge may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on community supervision. A judge may place on community supervision under this section a defendant charged with an offense under Section 21.11[.]") (current version at Tex. Code Crim. Proc. art. 42A.101 & 102).

8

not correspond with the statutory requirement that the circuit court's adjudication be based on clear and convincing evidence of abuse or neglect.

Pursuant to the statutory scheme for abuse and neglect proceedings, before a circuit court may adjudicate a parent as abusive or neglectful, the DHS must first prove "by clear and convincing evidence" that a "child is abused or neglected" and that "the respondent is [an] abusing, neglecting, or, if applicable, a battered parent." W. Va. Code § 49-4-601(i). *See also In re B.L.-1*, 251 W. Va. 92, ___, 909 S.E.2d 127, 134-35 (2024) (explaining that petitioner's appeal "from the circuit court's adjudicatory order," presented this Court with the limited question of "whether the circuit court properly found that the DHS proved the conditions of abuse and neglect by clear and convincing evidence"); *In re L.P.-1*, No. 15-0704, 2015 WL 7628727, at *3 (W. Va. Nov. 23, 2015) (memorandum decision) ("In addressing the burden of proof at the adjudicatory hearing, we have explained that '[W. Va. Code § 49-4-601(i)] requires the [DHS], in a child abuse or neglect case, to prove "conditions existing at the time of the filing of the petition . . . by clear and convincing proof."'" (quoting Syl. pt. 1, in part, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997)); Syl. pt. 2, in part, *In Interest of S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981) ("[T]he burden of proof in a child neglect or abuse case does not shift from the [DHS] to the parent, guardian[,] or custodian of the child. It remains upon the [DHS] throughout the proceedings.").

To prove abuse and neglect by clear and convincing evidence, the DHS must produce "more than a mere scintilla of evidence . . . to establish the veracity of the allegations of abuse and/or neglect[.]" *In re A.M.*, 243 W. Va. 593, 598, 849 S.E.2d 371, 376 (2020) (clarifying that this "does not impose as exacting an evidentiary burden as criminal proceedings which generally require proof beyond a reasonable doubt."). "This Court has explained that '"clear and convincing" is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established.'" *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (per curiam) (quoting *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)).

After the DHS presents its evidence, the circuit court "shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent[.]" W. Va. Code § 49-4-601(i). *See also* W. Va. R. P. Child Abuse & Neglect Proc. 27 ("At the conclusion of the adjudicatory hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to whether the child is abused and/or neglected in accordance with W. Va. Code § 49-4-601(i)."). The circuit court's findings must demonstrate that the DHS has met its burden of proving abuse or neglect by clear and convincing evidence to exercise jurisdiction over the matter. *See In re C.L.*, 249 W. Va. 95, 102, 894 S.E.2d 877, 884 (2023) ("At the adjudicatory hearing, to have jurisdiction over an abuse and neglect case, the circuit court must find *by clear and convincing evidence* that the children named in the petition are abused or neglected based upon conditions that existed at the time of filing." (emphasis added)).[20]

---

[20] Because adjudicatory orders are appealable, adequate findings are also essential to allow meaningful appellate review. *See Mullins v. Mullins*, 226 W. Va. 656, 662, 704 S.E.2d 656, 662 (2010) (per curiam) ("This Court has found, in various contexts, that meaningful appellate

Continued . . .

Where, as here, the DHS's allegations are based on threatened harm[21] arising from the respondent parent permitting the child to spend an extended amount of time with someone required to register as a sex offender, the bare fact of the person's status as a registered sex offender, without something more, does not reach the level of clear and convincing proof of abuse or neglect. In the context of the circuit court's consideration of temporary custody of a child who is the subject of a petition alleging abuse or neglect, the circuit court may absolve the DHS of its obligation to make "reasonable efforts to preserve the family" due to a parent's status as a registered sex offender only after considering "the nature and circumstances surrounding the prior charges against that parent[.]" W. Va. Code § 49-4-602(d)(2)(F).[22] A person's status as a registered sex offender should receive no less scrutiny when a child's extended exposure to that person is the sole basis for the DHS's allegations against the parent.

Evidence from the DHS about the nature and circumstances of charges that resulted in a person being a registered sex offender is essential to the circuit court's determination of whether that person presents a threat to children. Certainly, there may be circumstances in which a person's prior, and potentially remote-in-time, criminal conduct requires him or her to register as sex offender, yet the person may pose no threat to children. Accordingly, this Court has never adopted a per se rule that allowing one's child to be supervised by a registered sex offender always constitutes abuse and neglect.[23] In the absence of such a per se rule, the circuit court's adjudicatory

---

review of the decision of a lower court sitting without a jury may occur only when specific findings of fact and conclusions of law are contained in the appellate record." (quotations and citation omitted)); *Jared M. v. Molly A.*, No. 19-0764, 2020 WL 7233165, *1 (W. Va. Dec. 7, 2020) (memorandum decision) (reversing circuit court order and remanding for entry of a "new order setting forth [sufficient] findings of fact and conclusions of law" because the order on appeal "failed to set forth findings of fact and conclusions of law sufficient to allow meaningful appellate review").

[21] The statutory definitions for an "abused child" and a "neglected child" both include a child whose physical or mental health is *threatened* by a parent, guardian, or custodian. *See* W. Va. Code § 49-1-201 (emphasis added) (defining terms). In the case of a "neglected child," the recognized threats to the child's welfare include the "refusal, failure[,] or inability" of the "parent, guardian, or custodian" to provide necessary "shelter" or "supervision." *Id.* The recognized threats to an "abused" child's welfare include "sexual abuse or sexual exploitation." *Id.*

[22] *Cf.* W. Va. Code § 49-4-604(c)(7)(D) (stating the same for purposes of disposition).

[23] To illustrate the impropriety of a per se rule, here are three scenarios where a person's conviction of a crime requiring sex-offender registration may not, standing alone, conclusively show that such person is a threat to children. First, an eighteen-year-old who uses a cell phone to send obscene matter to a seventeen-year-old friend, with no intent to seduce the friend, could be convicted of distributing obscene matter to minors, a felony that requires

Continued . . .

findings as to whether a child's extended exposure to a registered sex offender posed a threat to the child should outline the supporting evidence of record, because "[w]ithout the proper evidence, the [circuit court's] findings [that a child is abused or neglected] are meaningless." *In re Bryanna H.*, 225 W. Va. 659, 669, 695 S.E.2d 889, 899 (2010) (per curiam). *See also In re C.M.*, 236 W. Va. 576, 582, 782 S.E.2d 763, 769 (2016) ("[A] finding of abuse or neglect at the adjudicatory stage must be supported by clear and convincing proof[.]").

In this case, the circuit court found E.W. was abused and neglected, and adjudicated the petitioner as an abusive and neglectful parent, based only on two findings: (1) J.D. is a registered sex offender, and (2) the petitioner allowed E.W. to visit his home in Texas for an extended visit. These findings are insufficient to demonstrate that the DHS met its burden to prove abuse or neglect by clear and convincing evidence. *See State v. T.C.*, 172 W. Va. 47, 50, 303 S.E.2d 685, 688 (1983) (acknowledging that sufficient evidence must be presented at adjudicatory hearing for circuit court to determine that the subject "'child is abused or neglected'" as "the prerequisite to any further proceedings in the case[.]" (quoting W. Va. Code § 49-6-2 (current version at W. Va. Code § 49-4-601))).

Therefore, I respectfully concur in part and dissent in part. I concur with the majority's decision to vacate the circuit court's August 10, 2023 order to the extent that it adjudicated the petitioner as abusing and/or neglecting her children, B.E., R.S., and O.S. without making requisite findings. However, in adjudicating the petitioner as abusing and/or neglecting E.W., the circuit court failed to make sufficient findings on the record or in its adjudicatory order to demonstrate that the DHS carried its burden of proving abuse or neglect by clear and convincing evidence, and instead applied what is essentially a per se rule when no such rule has been adopted in the applicable statutes or by this Court. This portion of the circuit court's order of August 10, 2023, should also be vacated, and this matter should be remanded for proper findings.

---

registration as a sex offender. *See* W. Va. Code § 61-8A-2 (prohibiting distribution of obscene matter to minors); W. Va. Code § 61-8A-1(e) (including "transmit" within meaning of "distribute"); W. Va. Code § 15-12-2(b)(1) (requiring any person convicted of violating W. Va. Code § 61-8A-1 et seq. to register as a sex offender). Second, a nineteen-year-old who engages in "sexual contact" with a fifteen-year-old who is willing but legally incapable of consent is guilty of misdemeanor third-degree sexual abuse and must register as a sex offender. W. Va. Code § 61-8B-9 (defining third-degree sexual abuse); W. Va. Code § 61-8B-1(5) (defining "sexual contact" as including "any intentional touching, either directly or through clothing, of the breasts [or] buttocks . . . done for the purpose of gratifying the sexual desire of either party"); W. Va. Code § 15-12-2(b)(2) (requiring any person convicted of violating W. Va. Code § 61-8B-1 et seq. to register as a sex offender). Third, an eighteen-year-old who knowingly and intentionally possesses a picture of a partially clothed fifteen-year-old girlfriend or boyfriend for "purely prurient purposes" is guilty of misdemeanor possessing child erotica and must register as a sex offender. *See* W. Va. Code § 61-8C-3a (prohibiting child erotica); W. Va. Code § 15-12-2(b)(3) (requiring any person convicted of violating W. Va. Code § 61-8C-1 et seq. to register as a sex offender).